## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KENNETH GOLDMAN,<br>46681 Ashmere Square<br>Sterling, VA 20165,<br><br>              Plaintiff,<br><br>v.<br><br>TWENTY-FIRST CENTURY DEMOCRATS,<br>Serve: Bill Combs<br>         1311 L St. N.W., Suite 300<br>         Washington, D.C. 20005<br><br>KELLY YOUNG,<br>1851 Monroe St NW<br>Washington, DC 20010,<br><br>              Defendants. | Civil Action No. _____<br>Jury Demand |

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF AND JURY DEMAND

### PRELIMINARY STATEMENT

1. Plaintiff, Kenneth Goldman, brings this action under the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401 et seq., against his former employer, Twenty-First Century Democrats ("Defendant TFCD"), for declaratory and injunctive relief and monetary damages for injuries he has sustained as a result of discrimination on the basis of religion and retaliation for his opposition to religious discrimination. Plaintiff also files this action against Kelly Young ("Defendant Young"), Defendant TFCD's former Executive Director, who was instrumental in Defendant TFCD's discriminatory and retaliatory treatment of Mr. Goldman. Defendant Young created a work environment dominated by her belief in the practices of Landmark Education

1

("Landmark") and pressured her employees to participate in Landmark activities. Landmark beliefs were the religious beliefs of Defendant Young and the Defendant TFCD. Defendants discriminated against Mr. Goldman, and others, by firing them because of their refusal to embrace Landmark religious beliefs.

## JURISDICTION AND VENUE

2.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and suit is brought between citizens of different states. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b).

## PARTIES

3.    Plaintiff Kenneth Goldman is a citizen of Virginia who resides at 46681 Ashmere Square, Sterling, VA 20165. Plaintiff is Jewish. Defendant TFCD employed Plaintiff as its Communications Director from April 2006 to December 2006.

4.    Defendant TFCD is a domestic political action committee (a "PAC") organized and operating under the laws of the District of Columbia. Its headquarters is at 1731 Connecticut Avenue NW, 2nd Floor, Washington, DC 20009.

5.    Defendant Kelly Young is a citizen of the District of Columbia who worked in the District of Columbia for the time period at issue in this case. At all times relevant to this Complaint, Defendant Young was Executive Director of Twenty-First Century Democrats, although she has since resigned from that position.

2

FACTUAL ALLEGATIONS

6.    Defendant TFCD was founded in 1985. Until 2004, Defendant TFCD specialized in training field organizers in the District of Columbia and elsewhere during election years. In 2004, Defendant TFCD became one of the largest and best-funded independent PACs in the country.

7.    Landmark is the progeny of Erhard Seminars Training, Inc. ("est"). Werner Erhard, who founded est in 1971, had a background in New Age practices and religions. In est seminars, trainers told participants that they were responsible for creating their own lives. Mr. Erhard reportedly told his trainees "in est training you are God" and other est trainers told trainees "man is the true God." Accounts of est seminars describe seemingly religious experiences. For example, a former participant has described portions of the est seminar as "filled with moans, sobs, whimpers, and cries . . . an earsplitting scream. . . . writhing and flailing in the air."

8.    After public criticism, est went through a series of name changes. In 1984, est training became known as "The Forum."

9.    In 1991, The Forum changed its name to "The Landmark Forum." The company operating the seminars reorganized briefly as the Landmark Education Corporation before changing its name again, in February 2003, to Landmark Education, LLC. In this form, Landmark continues to offer seminars known as the Landmark Forum, and a "Curriculum for Living," which includes Landmark Forum in Action, the Landmark Advances Course, and the Self Expression in Leadership Program.

10.   Landmark and est have religious characteristics and theological implications. As the seminar names suggest, Landmark and est tell participants how to live and address questions

3

such as man's place in the universe, as well as problems related to grief, intimacy and addiction.

11.    Beginning in 2004 or 2005, a year or two before Mr. Goldman was hired, Defendant
TFCD began to dedicate most of its financial resources to direct contributions to candidates.
Under Defendant Young's leadership, Defendant TFCD adopted selection criteria for candidates
which stated that Defendant TFCD sough to fund candidates who were "visionary, bold,
extraordinary," and "interested in making quantum leaps." On information and belief, these
terms are all from the jargon of Landmark.

12.    On March 7, 2006, Defendant Young launched a new organization called Inspiring
America. She hired one employee whom she put to work in the office suite of Defendant TFCD.
Inspiring America provides seminars that are similar to est and Landmark seminars. On
information and belief, the Inspiring America seminars have been led by a trainer or trainers who
are or were active in est and Landmark.

13.    Inspiring America has hosted at least four seminars. On information and belief, many
attendees receive scholarships. The scholarships are granted to ensure the teachings of Landmark
reach as many people as possible. The paid attendance for these seminars did not cover the costs.
Consequently, in a short time Inspiring America built up significant debt.

14.    Defendant Young used Defendant TFCD's resources, which are derived from
contributions, to support Inspiring America. Defendant Young also regularly directed an
employee of Defendant TFCD to dedicate large amounts of his time to Inspiring America.

15.    When Mr. Goldman applied for the Communications Director position with Defendant
TFCD in early 2006, he knew nothing about Defendant Young's personal dedication to
Landmark or Landmark's predominance in Defendant TFCD's workplace.

4

16.     Over a period of several weeks, starting in February 2006, Defendant TFCD interviewed Mr. Goldman and recruited him to become its Communications Director.

17.     During interviews, Mr. Goldman emphasized that job stability was of paramount concern because he and his wife had just had a baby. At least three times, Defendant Young assured Mr. Goldman that her organization was financially very stable and would not lay off staff for financial reasons. Mr. Goldman left a secure job to work for Defendant TFCD only after being given assurance that his position was secure and that Defendant TFCD would not dismiss him for financial reasons.

18.     Mr. Goldman was well-qualified for the position of Communications Director. Since earning his Bachelor of Arts in Government and Politics from George Mason University in 1994, he has directed media and communications at several premiere D.C.-area public interest organizations. His first professional employer promoted him four times over five years, ultimately making him their Director of Media Relations at the age of 27.

19.     Around the time Defendant TFCD hired Mr. Goldman, it also hired a Training Director and a Finance Director. All started work April 1, 2006.

20.     Within his first or second week, Mr. Goldman learned of Defendant Young's active involvement in Landmark and that Landmark was a key component in the management of the organization. Landmark beliefs shaped the Defendant TFCD's mission, business structure, programmatic work and communications. Mr. Goldman also learned that Defendant Young had based Inspiring America on Landmark beliefs.

21.     As Executive Director, Defendant Young edited communications that Mr. Goldman drafted. On information and belief, in her editing, Defendant Young infused Defendant TFCD's

5

communications with Landmark code words, buzz words, and jargon. Defendant TFCD's endorsement page offered a prime example of the use of Landmark language, identifying each of many endorsed political candidates as a "visionary and inspiring leader."

22.     Defendant Young interjected Landmark beliefs and techniques into regular staff meetings, requiring her staff to engage in exercises to "create possibilities," "create a new context" and "enroll in possibilities."

23.     Defendant Young approached staff members and urged them to participate in Landmark events outside of work. She drove staff to and from Landmark events and used Defendant TFCD's funds to pay for staff to attend Landmark events.

24.     When Defendant TFCD hired Mr. Goldman, four of the eight current staff members had already attended one or more Landmark seminars.

25.     In April and May 2006, Mr. Goldman researched Landmark on the internet, talked to colleagues about Landmark, and spoke with a former attendee of an est seminar. He learned that Landmark derived from est. He learned that commentators regard est as religious and as having theological implications. Mark Lotwis, Executive Vice President of Defendant TFCD, described his Landmark experience to Mr. Goldman, which had been at Defendant Young's home. Mr. Lotwis described the experience as religious, noting, for example, that individuals had shared very personal facts, including discussing substance abuse. Ms. Young had discussed her own issues with marital intimacy, and that over the three days of Mr. Lotwis' introductory course, several people stood up and cried.

26.     Starting in or around May 2006 and continuing until Mr. Goldman's termination from TFCD in December 2006, Mr. Lotwis told him many times, "You know how she [Defendant

6

Young] is. You know how important this is to her. If you do Landmark, you know you stand a better chance." Mr. Lotwis also told Mr. Goldman, "she trusts us more if we're involved [in Landmark]."

27.     In the Spring of 2006, Mr. Goldman told Mr. Lotwis that if Defendant Young urged him to attend a Landmark event, he would refuse. Mr. Goldman asked Mr. Lotwis to tell Defendant Young not to approach him about Landmark.

28.     Defendant TFCD hired a new National Field Director on a temporary basis in or around May or June 2006. Shortly thereafter, Ms. Young told the Field Director that she wanted him to stay on full-time.

29.     Defendant TFCD's Training Director, who had started the same day Mr. Goldman had, and the new Field Director also told Mr. Lotwis they did not wish to speak to Defendant Young about Landmark.

30.     In the office they shared, Mr. Goldman, the Training Director, and the Field Director regularly discussed their discomfort with Landmark's influence at Defendant TFCD, stating that Landmark was Defendant Young's religion, and that they were uncomfortable with her religion's place in the office. In or around July 2006, Mr. Goldman and his two office-mates repeated to Mr. Lotwis during a closed door meeting that none of them wanted to be pressured to attend Landmark.

31.     In July or August 2006, Defendant Young called Mr. Goldman into her office to "share" with her one-on-one. Mr. Goldman's father had died in January. Since that time, Mr. Goldman's daughter had started day care and he had been sick four or five times. Over approximately one hour in her office, Defendant Young argued that Mr. Goldman had contracted illnesses as a

7

consequence of failing to deal with the passing of his father, and not by exposure to germs. Defendant Young used Landmark terminology throughout the conversation. Mr. Goldman did not welcome this discussion.

32.     In July or August 2006, Mr. Lotwis attended an Inspiring America seminar in Telluride, Colorado. Before he went, he made it clear to Mr. Goldman that he was going because Defendant Young required him to attend. Shortly after he returned, he told Mr. Goldman that he was signing up for a September or October 2006 Landmark Forum, an intensive weekend long introduction to Landmark.

33.     In or around July or August 2006, Mr. Goldman and Mr. Lotwis discussed co-mingling of the funds of Defendant TFCD and Inspiring America. Mr. Lotwis informed Mr. Goldman that Defendant TFCD would be in trouble if anyone found out about the co-mingled resources. Mr. Goldman told Mr. Lotwis that as second-in-command he had to stop Defendant Young from using Defendant TFCD's money to fund Inspiring America.

34.     Through Landmark, Defendant Young befriended a young woman who called herself "Anima." During the Summer of 2006, Anima began volunteering her time to Inspiring America at Defendant TFCD's office. She reported directly to Defendant Young. (By this time, Inspiring America's first and only employee had left and it had no official employees). Anima approached one of Defendant TFCD's interns and pressured her to attend a Landmark event. The intern reported Anima's behavior to Mr. Goldman because he had the responsibility of supervising the interns. She told him that Anima's suggestion made her uncomfortable.

35.     Mr. Goldman complained to Mr. Lotwis that it was inappropriate for Anima or anyone else to pressure a college-age intern to participate in Landmark, and that Defendant Young

8

should tell Anima so.

36.     Three to four days later, the intern complained to Mr. Goldman again that Anima continued to pressure her to attend Landmark. Mr. Goldman again reported the incident to Mr. Lotwis, who, on information and belief, talked to Defendant Young about the problem.

37.     In late Summer or Fall 2006, Mr. Lotwis told Mr. Goldman that he had told Defendant Young that Mr. Goldman did not wish to attend Landmark events, and that she was not pleased.

38.     In October or November 2006, Defendant Young began authorizing payment of Anima with Defendant TFCD's funds. Anima only worked on Inspiring America projects and did no work for TFCD.

39.     In or around November 2006, Mr. Lotwis told Mr. Goldman that he had signed up for an advanced Landmark seminar. Mr. Lotwis again made it clear that he was going because Defendant Young required him to attend. During this discussion, Mr. Lotwis told Mr. Goldman, as he had before, "You know how she [Defendant Young] is. You know how important this is to her. If you do Landmark, you know you stand a better chance," and "She trusts us more if we're involved [in Landmark]."

40.     During the 2006 election cycle, Defendant TFCD raised several million dollars and retained a significant amount after election expenditures. Defendant TFCD's Accounting Manager told Mr. Goldman that the financial situation was "just fine" and that the organization had plenty of money.

41.     On or about November 30, 2006, Defendant Young and Mr. Lotwis told Mr. Goldman, the Training Director, and the Field Director – the only three employees resistant to Landmark -- -- that they would be let go effective December 22, 2006 for "financial reasons."

9

42.     Defendant Young told Mr. Goldman that the termination decision was purely financial
and based in no way, shape, or form on his performance. Defendant Young told Mr. Goldman
that he had done a "fantastic" job. Defendant Young further told him that the organization was
totally and completely out of funds, and that very shortly, it would likely shut its doors for good.

43.     Of Defendant TFCD's eight total staff members, excluding the Inspiring America staff,
Defendant TFCD continued to employ the five employees who had attended Landmark activities
(Defendant Young, Mr. Lotwis, the Accounting Manager, the Associate, and the Financial
Director) and terminated the three employees, including Mr. Goldman, who had refused to attend
Landmark events.

44.     Shortly after terminating Mr. Goldman, the Training Director, and the Field Director,
Defendant TFCD hired six new employees: a National Political Director, a Vice President for
Development and Strategic Partners, a Director of Development, a fellow, an Executive
Assistant, and an Online Communications Associate -- who took over many of the duties Mr.
Goldman had performed.

45.     Mr. Goldman has suffered financially and professionally as a result of the organization's
actions.

46.     Defendants' termination of Mr. Goldman has had a career-scarring effect. For more than
a decade, Mr. Goldman led public relations and communications programs for progressive
advocacy organizations, enjoying steadily increasing responsibility and recognition. However,
for the first time in his career, after Defendant TFCD unlawfully terminated his employment after
only eight months with the organization, Mr. Goldman was not able to obtain a communications
position in a progressive advocacy organization. He had no choice but to take a supporting

10

position in a non-advocacy organization.

47.    In addition, Defendants' termination of Mr. Goldman caused him emotional and physical

suffering, particularly out of concern for supporting his family, including his daughter, now a one

year old, and induced a stress related illness that required four days of hospitalization.

COUNT ONE
DISCRIMINATION IN VIOLATION OF
THE D.C. HUMAN RIGHTS ACT, D.C. CODE § 2-1402.11(a)
AGAINST BOTH DEFENDANTS

48.    Plaintiff incorporates, as though restated here, each of the factual allegations stated in

paragraphs 1 through 47 above.

49.    The District of Columbia Human Rights Act prohibits discrimination in employment on

the basis of religion with regard to the terms, privileges and conditions of employment.

50.    Despite Defendant Young's confirmation that Plaintiff Goldman's job performance was

"fantastic," Defendants terminated Mr. Goldman.

51.    Landmark Education, as embraced by Defendant TFCD and Defendant Young,

constitutes a "religion."

52.    There is substantial evidence that Defendants terminated Mr. Goldman because he

refused to practice Defendant Young's religious beliefs. Mr. Goldman refused to attend

Inspiring America or Landmark Education seminars. He intervened on behalf of an intern who

did not want to attend such events. He opposed co-mingling of funds between Defendant TFCD

and Inspiring America. Moreover, Defendants terminated not only Mr. Goldman, but also the

Training Director and the Field Director, who had also refused to attend Landmark seminars.

However, Defendants retained all employees who had attended Landmark seminars.

11

53.    Defendants' actions that are described in this Complaint constitute discrimination in

violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11(a).

54.    Defendants' actions deprived Plaintiff of his right to enjoy equal opportunity to

participate in all aspects of life, including employment. D.C. Code § 2-1402.01.

55.    Defendants' discriminatory actions were willful, reckless, and malicious.

56.    Defendants' conduct in firing Mr. Goldman because of his failure to embrace Landmark's

religious teachings is outrageous, particularly in light of Defendants' professed support for

candidates and causes that support civil rights, civil liberties, and religious freedom.

57.    Defendants' violation of the D.C. Human Rights Act directly and proximately caused Mr.

Goldman loss of income and other economic benefits, job search costs, the loss of future

employment opportunities, impairment of his future earning capacity, and damage to his

professional reputation. Defendants' violation of the D.C. Human Rights Act also caused Mr.

Goldman emotional distress, particularly out of concern for supporting his family.

COUNT TWO
RETALIATION AGAINST PLAINTIFF FOR EXERCISING AND ENJOYING
RIGHTS PROTECTED UNDER THE D.C. HUMAN RIGHTS ACT
IN VIOLATION OF D.C. CODE § 2-1402.61
AGAINST BOTH DEFENDANTS

58.    Plaintiff incorporates, as though restated here, each of the factual allegations stated in

paragraphs 1 through 57 above.

59.    Under the D.C. Code, it is "an unlawful discriminatory practice to coerce, threaten,

retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of

having exercised or enjoyed, or on account of having aided or encouraged any other person in the

exercise or enjoyment of any right granted or protected under" the District of Columbia Human

Rights Act. D.C. Code § 2-1402.61.

60.    Defendants retaliated against Plaintiff because he resisted a proscribed religious practice and intervened on behalf of an intern who did not want to attend proscribed religious events.

61.    Defendants' actions constitute retaliation in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.61.

62.    Defendants' retaliatory actions were willful, reckless, and malicious.

63.    Defendants' retaliatory actions damaged Plaintiff's professional reputation and caused him embarrassment, humiliation and indignity.

64.    Defendants' violation of the D.C. Human Rights Act directly and proximately caused Plaintiff loss of income and other economic benefits, job search costs, the loss of future employment opportunities, impairment of his future earning capacity, and damage to his professional reputation. Defendants' violation of the D.C. Human Rights Act also caused Plaintiff emotional distress, particularly out of concern for supporting his family.

## COUNT THREE
### AIDING AND ABETTING IN DISCRIMINATION
### IN VIOLATION OF D.C. CODE § 2-1402.62
### AGAINST DEFENDANT YOUNG

65.    Plaintiff incorporates, as though restated here, each of the allegations in paragraphs 1 through 64 above.

66.    Defendant Young, by virtue of the specific acts described above, aided and abetted Defendant TFCD in discriminating against Mr. Goldman based on his refusal to practice Defendant Young's religious beliefs, by terminating Mr. Goldman.

67.    Defendant Young intended to aid and abet in the scheme to discriminate against Plaintiff.

13

68.    The conduct of Defendants was a direct and proximate cause of the injuries and damages

to Plaintiff set forth below, in an amount to be proven at trial.

69.    Defendant TFCD and Defendant Young are jointly and severally liable for all damages

proximately caused by actions taken in furtherance of their unlawful acts.

COUNT FOUR
AIDING AND ABETTING IN RETALIATION
IN VIOLATION OF D.C. CODE § 2-1402.62
AGAINST DEFENDANT YOUNG

70.    Plaintiff incorporates, as though restated here, each of the allegations in paragraphs 1

through 69 above.

71.    Defendant Young, by virtue of the specific acts described above, aided and abetted

Defendant TFCD in retaliating against Mr. Goldman based on his refusal to practice Defendant

Young's religious beliefs, by terminating Mr. Goldman.

72.    Defendant Young intended to aid and abet in the scheme to retaliate against Plaintiff.

73.    The conduct of Defendants was a direct and proximate cause of the injuries and damages

to Plaintiff set forth below, in an amount to be proven at trial.

74.    Defendant TFCD and Defendant Young are jointly and severally liable for all damages

proximately caused by actions taken in furtherance of their unlawful acts.

NOW WHEREFORE Plaintiff prays this court for the following relief:

1.    A declaratory judgment that Defendants' termination of Mr. Goldman's

employment was in violation of the D.C. Human Rights Act;

2.    An injunction proscribing future religious discrimination by Defendants;

3.    An award of backpay to Plaintiff from Defendants;

14

5. An award of frontpay to Plaintiff from Defendants;

6. An award of compensatory damages to Plaintiff from Defendants in an amount to be determined by a jury but in no event less than $100,000;

7. An award of punitive damages to Plaintiff from Defendants in an amount to be determined by a jury;

8. An award to Plaintiff of reasonable attorneys' fees and costs, including expert witness fees; and

9. All other relief this Court deems just.

Respectfully submitted,

David Wachtel  DC Bar # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorney for Kenneth Goldman

DATED: November 19, 2007

15

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KENNETH GOLDMAN, )<br><br>Plaintiff, )<br><br>v. )<br><br>TWENTY-FIRST CENTURY DEMOCRATS, )<br><br>KELLY YOUNG, )<br><br>Defendants. ) | Civil Action No. _____ |

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

David Wachtel  DC Bar # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorney for Kenneth Goldman

DATED:  November 19, 2007

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I. (a) PLAINTIFFS**

KEN GOLDMAN

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** LOUDON
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

DAVID WACHTEL, ESQUIRE
BERNABEI & WACHTEL, PLLC
1775 T STREET, NW
WASHINGTON, DC 20009
202-745-1942

**DEFENDANTS**

TWENTY-FIRST CENTURY DEMOCRATS &
KELLY YOUNG

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**ATTORNEYS (IF KNOWN)**

BARRY REINGOLD & BRIAN SVOBODA
PERKINS COIE
607 FOURTEENTH STREET, NW
WASHINGTON, DC 20005

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government
   Plaintiff

O 2 U.S. Government
   Defendant

O 3 Federal Question
   (U.S. Government Not a Party)

◉ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | ◉ 4 |
| Citizen of Another State | ◉ 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**

☐ 410 Antitrust

**O B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O C. Administrative Agency
Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
     Administrative Agency is Involved)

**O D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

## O E. General Civil (Other)    OR    O F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
     defendant
☐ 871 IRS-Third Party 26
     USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
     of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
     Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
     Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
     Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
     Exchange
☐ 875 Customer Challenge 12 USC
     3410
☐ 900 Appeal of fee determination
     under equal access to Justice
☐ 950 Constitutionality of State
     Statutes
☐ 890 Other Statutory Actions (if
     not administrative agency
     review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

THIS CASE ARISES UNDER D.C. CODE SECTION 2-1401. THIS COURT HAS JURISDICTION UNDER 28 U.S.C. SECTION 1332(a)(1).

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ $100,000+ <br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE    11-19-2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

   IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

   VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.